## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BEVERLY JACKSON STANCIL, <br>        Appellant, | DOCKET NUMBER <br> DC-0752-17-0153-I-1 |
|     v. | |
| DEPARTMENT OF THE INTERIOR, <br>        Agency. | DATE:  January 30, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Beverly Jackson Stancil, Cheverly, Maryland, pro se.

Pegah Yazdy Gorman and Jennifer Koduru, Washington, D.C., for the
agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's analysis of the whistleblower reprisal claim under 5 U.S.C. § 2302(b)(8) and to consider the affirmative defense of reprisal for disclosing information to the agency's Office of Inspector General (OIG) under 5 U.S.C. § 2302(b)(9)(C), we AFFIRM the initial decision.

## BACKGROUND

Effective November 21, 2016, the agency removed the appellant from her Program Assistant (Special Assistant) position in the agency's Office of Partnerships, Youth and Community Engagement, National Capital Region, National Park Service, based on a charge of failure to follow her supervisor's instructions. Initial Appeal File (IAF), Tab 2 at 2, Tab 8 at 111-18. The agency based its charge on three specifications alleging that the appellant failed to attend a meeting scheduled for her return from a 14-day suspension on June 20, 2016, a standing biweekly update meeting on June 21, 2016, and a webinar meeting on June 30, 2016, as instructed by her supervisor. IAF, Tab 8 at 112-13. In deciding to remove the appellant, the agency considered, among other things, her prior discipline, consisting of the following: a letter of reprimand issued on November 20, 2015, for four instances of failing to follow her supervisor's directions to attend meetings; and a 14-day suspension from June 5–18, 2016, for

five instances of failing to follow her supervisor's instructions to attend meetings. IAF, Tab 7 at 21-22, 37-42, Tab 8 at 111, 114. The appellant's supervisor was the proposing official for the 14-day suspension and removal, and the Regional Director was the deciding official for the suspension and removal. IAF, Tab 7 at 28, 37, 49, Tab 8 at 111. The appellant appealed her removal to the Board, and she requested a hearing. IAF, Tab 1. She raised the affirmative defenses of a violation of her due process rights and reprisal for whistleblowing and for disclosing information to OIG. IAF, Tab 1 at 5, Tab 14 at 3-7.

After holding a hearing, the administrative judge issued an initial decision affirming the removal action. IAF, Tab 21, Initial Decision (ID) at 1-2, 15.[2] Specifically, she found that the agency proved all three specifications of its charge. ID at 2-7. She further found that the appellant failed to prove her affirmative defenses of a violation of her due process rights or whistleblower reprisal under 5 U.S.C. § 2302(b)(8). ID at 7-12. In addition, the administrative judge found that the agency proved nexus and that the agency did not abuse its discretion in its penalty selection. ID at 12-15.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency proved its charge by preponderant evidence.</u>

Generally, in an adverse action appeal, the agency must prove its charge by a preponderance of the evidence.[3] 5 U.S.C. § 7701(c)(1)(B). To prove a charge of failure to follow supervisory instructions, an agency must establish that an employee was given proper instructions and that she failed to follow them, without regard to whether the failure was intentional or unintentional. *Hamilton*

---

[2] We assume that the administrative judge was referring to the agency's removal action when she found that the agency's demotion action must be affirmed. ID at 15.

[3] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

*v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-56 (1996). Here, the record contains strong evidence showing that the appellant was given clear instructions from her supervisor to attend the meetings and the webinar in question. IAF, Tab 7 at 65, 81-88, 116-22. We find that the appellant's immediate supervisor acted properly by directing the appellant to attend the meetings and the webinar concerning her work plan and assignments. IAF, Tab 7 at 65, 81-88, 119; Hearing Transcript (HT) at 11, 19-24 (testimony of the supervisor). The administrative judge found that the supervisor credibly testified that the purpose of the individual biweekly update meetings was to provide employees with guidance and to track their projects, and that she sent the appellant an email scheduling a meeting to discuss her projects upon her return from serving her suspension. ID at 4, 6; HT at 11, 19-21 (testimony of the supervisor). To the extent the appellant disputes the administrative judge's demeanor-based credibility findings, we find that she has failed to present a sufficiently sound reason to disturb them. PFR File, Tab 1 at 11; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (finding that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and that the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). Moreover, it is undisputed that the appellant failed to follow her supervisor's instructions to attend the meetings and the webinar.

In her petition for review, the appellant argues that she did not attend the meetings in question because of her supervisor's creating a hostile work environment, harassing tactics, and escalating rage, and because it was the agency's policy to report harassment to the Regional Director, who was the deciding official in this case. PFR File, Tab 1 at 7-8. We find that these arguments are unavailing. Employees do not have an unfettered right to disregard supervisory instructions. *Howarth v. U.S. Postal Service*, 77 M.S.P.R. 1, 7 (1997). Rather, an employee must first comply with an order and then, if she

disagrees with the order, register her complaint or grievance later, except in certain limited circumstances, such as when obedience would cause her irreparable harm. *Larson v. Department of the Army*, 91 M.S.P.R. 511, ¶ 21 (2002). An employee's subjective and unsupported apprehension of danger does not justify her refusal to perform her duties. *Id.* Here, there is no evidence to suggest that attending the scheduled meetings or webinar would have caused the appellant irreparable harm. Thus, we find no reason to disturb the administrative judge's finding that the agency proved all three specifications of its charge by preponderant evidence.[4] ID at 7.

The appellant argues that the agency failed to produce pertinent evidence in this appeal. PFR File, Tab 1 at 2-3, 5, 7, 9-11. Because the appellant did not file a motion to compel, she is precluded from raising this discovery issue for the first time on review, and we deny her request for the Board to direct the agency to produce additional evidence. *Id.* at 2-3, 5, 10; *see Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005), *aff'd*, 167 F. App'x 217 (Fed. Cir. 2006). Although the appellant asserts that the administrative judge failed to provide discovery instructions, PFR File, Tab 1 at 2, the record reflects otherwise, IAF, Tab 3 at 3-4. Moreover, we cannot investigate the appellant's claims of harassment and a hostile work environment, as she requests on review, because the Board lacks investigative authority. PFR File, Tab 1 at 4; *see* 5 U.S.C. § 1204.

---

[4] At the time that the appellant filed this appeal, 5 U.S.C. § 2302(b)(9)(D) made it a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would require the individual to violate a law." Our reviewing court considered this provision and held that "law" only included statutes, and not rules and regulations. *See Rainey v. Merit Systems Protection Board*, 824 F.3d 1359, 1364-65 (Fed. Cir. 2016). However, on June 14, 2017, the President signed the Follow the Rules Act into law. Pub. L. No. 115-40, 131 Stat. 861 (2017). The Act amends section 2302(b)(9)(D) to provide whistleblower protection for individuals who refuse to obey an order that would require the violation of a law, rule, or regulation. Nevertheless, the Board has determined that this expansion does not apply retroactively to cases pending at the time the Act was enacted. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 19.

The appellant further alleges that the administrative judge improperly denied her requested witnesses. PFR File, Tab 1 at 3-4. An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10), to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985). Here, the administrative judge disallowed the appellant's requested witnesses in the Order and Summary of Telephonic Prehearing Conference and informed her that she may object to the rulings in the summary on the morning of the hearing. IAF, Tab 18 at 4-6. However, the appellant did not object to the administrative judge's rulings on witnesses at the hearing. *See Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988) (finding that an appellant's failure to timely object to rulings on witnesses precluded him from doing so on petition for review). Nevertheless, we find that the appellant's description of the expected testimony of the disallowed witnesses fails to show that the administrative judge abused her discretion. IAF, Tab 14 at 8-12. In particular, the appellant has not shown that the disallowed witnesses would have provided relevant, material, and nonrepetitious testimony, considering that she had the opportunity to testify and to question her supervisor and the deciding official during the hearing.

In addition, the appellant contends that the administrative judge did not allow her to fully answer questions during the status and prehearing conferences and the hearing. PFR File, Tab 1 at 12. We have reviewed the hearing transcript and find that the limits placed on the appellant's testimony were within the administrative judge's broad discretion to regulate the course of the hearing under 5 C.F.R. § 1201.41(b)(3), (6). *See Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 8 (2000) (finding that an administrative judge has wide discretion to control the proceedings, including authority to exclude irrelevant or immaterial testimony). Further, the appellant has failed to explain how her substantive rights were harmed by any limits imposed by the administrative judge during the status or prehearing conferences. *See Panter v. Department of the Air Force*,

22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversing an initial decision).

We modify the initial decision to supplement the administrative judge's analysis of the appellant's affirmative defense of whistleblower reprisal under 5 U.S.C. § 2302(b)(8).

The appellant's allegations of whistleblower reprisal must be analyzed under the burden-shifting standard set forth in 5 U.S.C. § 1221(e).[5] *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); 5 C.F.R. § 1209.2(e). Under this standard, the appellant must prove by preponderant evidence that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. § 1221(e)(1); *Alarid*, 122 M.S.P.R. 600, ¶¶ 12-13; 5 C.F.R. § 1209.2(e)(1). If the appellant makes such a showing, then the burden of persuasion shifts to the agency to prove, by clear and convincing evidence, that it would have taken the same action in the absence of such disclosure or activity. 5 U.S.C. § 1221(e)(2); *Alarid*, 122 M.S.P.R. 600, ¶ 14; 5 C.F.R. § 1209.2(e)(2).

We begin by considering whether the appellant engaged in protected whistleblowing by making a disclosure of information protected by 5 U.S.C. § 2302(b)(8). A protected disclosure described in section 2302(b)(8) generally means a disclosure of information that an appellant reasonably believes evidences (1) any violation of any law, rule, or regulation; (2) gross mismanagement; (3) a gross waste of funds; (4) an abuse of authority; or (5) a substantial and specific danger to public health or safety. *Shannon v. Department of Veterans Affairs*,

---

[5] We have reviewed the relevant legislation enacted during the pendency of this appeal. To the extent that we cite herein to case law applying versions of law subsequently amended by the Whistleblower Protection Enhancement Act of 2012 or other legislation, we find that the statutory amendments do not affect the material holdings relied upon in this decision and do not affect the outcome of the appeal.

121 M.S.P.R. 221, ¶ 22 (2014). An appellant is not required to prove the alleged misconduct actually occurred. *Id.*, ¶ 28. Rather, an appellant need only prove that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by her could reasonably conclude that the disclosed actions of the Government evidence one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8). *Shannon*, 121 M.S.P.R. 221, ¶¶ 22, 28.

Here, the administrative judge did not discuss the appellant's alleged disclosures that she described in her prehearing submission. IAF, Tab 14 at 3-7; ID at 7-11. We modify the initial decision as follows to supplement the administrative judge's analysis of the whistleblower reprisal claim. The appellant alleged that she was under abusive supervision for the 11 years preceding her removal. IAF, Tab 14 at 3. Most of the appellant's claims of harassment and a hostile work environment concern her supervisor, who started supervising the appellant when she was reassigned from a different office in January 2012. IAF, Tab 14 at 4-7, Tab 15 at 25; HT at 7 (testimony of the supervisor). In her pleadings before the administrative judge, the appellant claimed retaliation for reporting harassment and a hostile work environment to the OIG in August 2015 and February 2016, and to agency officials on several occasions.[6] IAF, Tab 1 at 5, Tab 14 at 3-7. In particular, the appellant asserted that she made the following disclosures: she began reporting harassment and a hostile work environment in 2006; she requested an independent investigation of her absent-without-leave status, leave restrictions, and reassignment from the Special Assistant position to the Program Assistant position;[7] in August 2015, she told the

---

[6] The appellant does not allege that her claims of harassment or a hostile work environment are based on a protected status under Title VII of the Civil Rights Act of 1964, as amended, or other basis described in 5 U.S.C. § 2302(b)(1).

[7] The appellant alleged that she was "illegally demoted" when she was reassigned to a different office in January 2012 and when her position title was changed from "Special Assistant" to "Program Assistant." IAF, Tab 14 at 3. The appellant does not allege, and the record does not reflect, that these actions resulted in a reduction in grade or pay. PFR File, Tab 1 at 5-6; IAF, Tab 2 at 2, Tab 14 at 3, Tab 15 at 13, 25. Thus, they do not constitute independently appealable demotions under chapter 75. The appellant's

deciding official that she had filed an OIG complaint; in September or October 2015, she told her supervisor that they needed to inform the deciding official of a conflict that they had had during a meeting; she asked her supervisor to schedule meetings in the presence of the deciding official and told her that they needed to bring their conflicts to higher-level leadership; on February 12, 2016, during her oral reply to the proposed 14-day suspension, she disclosed the continued harassment and hostile work environment, her efforts to comply with agency policy requiring employees to report harassment to the deciding official, as the Regional Director, and her insistence to her supervisor that they had to involve the deciding official in their conflicts; she began forwarding all emails sent from her supervisor to the deciding official and to other agency officials; in May 2016, she met with an equal employment opportunity (EEO) official regarding her complaint of a hostile work environment; in September 2016, she emailed the deciding official and other agency officials about receiving an envelope from her supervisor (containing the notice of proposed removal), and she requested an independent investigation of all actions taken against her since January 1, 2016; on September 29, 2016, during her oral reply to the proposed removal, she reiterated her claim of a hostile work environment and asserted that she was being punished for her disciplinary actions and that she did not receive guidance regarding her harassment and hostile work environment claims; and she emailed the deciding official, her supervisor, and other agency officials about scheduling a meeting with the Director of the National Park Service.  IAF, Tab 14 at 3-6.

The appellant did not specify, nor does the record reveal, what she disclosed to OIG beyond a claim of a hostile work environment or harassment. However, the record shows that, during an agency investigation, the appellant alleged that her supervisor took the following actions against her:  subjected her

---

dispute on review regarding her position title does not concern a material fact.  PFR File, Tab 1 at 5-6.  Thus, any error by the administrative judge in finding the appellant's position title undisputed is not harmful to her substantive rights.  ID at 2; *see Panter*, 22 M.S.P.R. at 282.

to a hostile work environment and bullying; screamed and hollered at her; invaded her personal space; claimed that she made coworkers uncomfortable; claimed that she made too much noise; accused her of incompetence; demeaned her professionalism; assigned her piecemealed work; changed her work assignments; told her that she was the boss; and created double standards.[8] IAF, Tab 8 at 46-47. The appellant further alleged during the investigation that the agency changed her position from Special Assistant to Program Assistant, she felt that she was "mal-assigned," and she wanted to be reassigned out of her office. *Id.* at 47. The agency concluded in its December 2013 investigative report that only her claims regarding noise complaints, piecemeal work, and her desire for a reassignment were substantiated. *Id.* at 48-51. The record further shows that, after receiving a memorandum in March 2015 from her supervisor requiring medical documentation for sick leave, the appellant requested an independent investigation of the memorandum, her Program Assistant position, and her applications for various vacancies. *Id.* at 34-42. In an email dated May 26, 2016, the deciding official informed the appellant that he had asked an EEO official to evaluate her claim of a hostile workplace. IAF, Tab 7 at 89. After meeting with the EEO official, the appellant forwarded to him emails sent by her supervisor concerning scheduled meetings. *Id.* at 90-105. In an email dated September 8, 2016, the appellant again requested an independent investigation of all actions taken against her since January 1, 2016. IAF, Tab 8 at 19.

The appellant reasserts on review that she made protected disclosures regarding harassment and a hostile work environment. PFR File, Tab 1 at 10. For the following reasons, we agree with the administrative judge's finding that the appellant failed to prove that she made a protected disclosure. ID at 10-11. Based on our review of the record, we find that the appellant has failed to meet

[8] The former Regional Director called for this investigation. IAF, Tab 8 at 43. To the extent the administrative judge erroneously found that the deciding official asked for this investigation, we find that any such error has not harmed the appellant's substantive rights. ID at 10; *see Panter*, 22 M.S.P.R. at 282.

her burden of proving that a disinterested observer could reasonably conclude that the information she disclosed evinced wrongdoing described in 5 U.S.C. § 2302(b)(8). Taken as a whole, the appellant's alleged disclosures of harassment and a hostile work environment are fundamentally her own personal complaints and disagreements about how she was treated by the agency, and they are not protected whistleblowing. *See Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999) (observing that an employee's purely subjective perspective is not sufficient to prove that a disclosure is protected); *see also Carr v. Department of Defense*, 61 M.S.P.R. 172, 180-81 (1994) (finding that the appellant's letter, which alleged that the agency had subjected him to "unwarranted stress" and "unjustifiable harassment," did not constitute a protected disclosure).

In particular, an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to herself or to other preferred persons. *Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011). Although we acknowledge that harassing or intimidating other employees may constitute an abuse of authority in certain situations, such as when a supervisor uses her influence to denigrate other staff members in an abusive manner and to threaten the careers of staff members with whom she disagrees, *id.*, we find here that a disinterested observer could not reasonably conclude that the described events rose to the level of an abuse of authority, *see Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 24 (2005) (finding that the appellant's allegations that agency officials were arbitrary and capricious, discriminatory, conspiratorial, and manipulative did not constitute nonfrivolous allegations of an abuse of authority). Further, we find that the appellant has not proven that a disinterested observer could reasonably believe that the alleged agency actions constituted gross mismanagement, which is a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Embree v. Department of the*

*Treasury*, 70 M.S.P.R. 79, 85 (1996) (observing that gross mismanagement does not include management decisions that are merely debatable or action or inaction constituting simple negligence or wrongdoing). In addition, we find that the appellant has not shown that a disinterested observer could reasonably conclude that the information disclosed evinced any violation of any law, rule, or regulation, including any agency policy on harassment, a hostile work environment, or whistleblowing. She has not provided any evidence to support her claim that there was a policy requiring all harassment accusations to be reported to the deciding official, as the Regional Director. IAF, Tab 14 at 4, 6.

<u>We modify the initial decision to consider the appellant's affirmative defense of reprisal for disclosing information to OIG under 5 U.S.C. § 2302(b)(9)(C).</u>

The administrative judge failed to analyze the appellant's claim of retaliation for reporting wrongdoing to OIG as an affirmative defense of reprisal for engaging in protected activity under 5 U.S.C. § 2302(b)(9)(C). ID at 7-11; IAF, Tab 1 at 5, Tab 14 at 3. We modify the initial decision, as follows, to consider such an affirmative defense. An affirmative defense of reprisal for engaging in protected activity under 5 U.S.C. § 2302(b)(9)(C) must be analyzed under the burden-shifting standard set forth in 5 U.S.C. § 1221(e). *See Alarid*, 122 M.S.P.R. 600, ¶¶ 12-15 (applying this standard to an affirmative defense of reprisal under 5 U.S.C. § 2302(b)(9)(B)); *see also Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶¶ 15, 39 (2016) (applying this standard to an affirmative defense of reprisal under 5 U.S.C. § 2302(b)(9)(A)(i)). Under this standard, an appellant first must prove by preponderant evidence that she engaged in protected activity that was a contributing factor in the personnel action at issue. *Elder*, 124 M.S.P.R. 12, ¶ 39. If she does so, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action absent her protected activity. *Id.*

Under the law in effect at the time of the appellant's removal, an employee engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when she

cooperated with or disclosed information to an agency's OIG or the Office of Special Counsel (OSC), in accordance with applicable provisions of law.[9] Under the broadly worded provision of section 2302(b)(9)(C), such disclosures of information are protected regardless of their content, as long as they are made in accordance with applicable provisions of law. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. Here, it is undisputed that the appellant filed an OIG complaint before she was removed. HT at 26 (testimony of the supervisor), 103-04 (testimony of the deciding official), 167 (testimony of the appellant). Further, the deciding official testified that the appellant had told him throughout the process of effecting her 14-day suspension and removal that she would be filing an OIG complaint. HT at 103-04, 110. Therefore, we find that the appellant has proven a prima facie case of reprisal for engaging in protected activity under 5 U.S.C. § 2302(b)(9)(C). *See Alarid*, 122 M.S.P.R. 600, ¶ 13 (explaining that, under the knowledge/timing test, an appellant can prove that her protected activity was a contributing factor in the challenged action by showing that the deciding official knew of the protected activity and took the personnel action within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action).

Next, the burden shifts to the agency to prove by clear and convincing evidence[10] that it would have removed the appellant in the absence of her protected activity of filing an OIG complaint. In determining whether the agency has met this burden, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence

---

[9] Section 1097(c)(1) of the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017) amended 5 U.S.C. § 2302(b)(9)(C) to further protect disclosures "to any other component responsible for internal investigation or review." This additional provision appears immaterial to this appeal. In any event, this amendment does not apply retroactively and, thus, does not apply to this appeal. *Edwards v. Department of Labor*, 2022 M.S.P.R. 9, ¶¶ 29-33.

[10] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than preponderance of the evidence. 5 C.F.R. § 1209.4(e).

and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Id.,* ¶ 14 (citing *Carr v. Social Security Administration,* 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence; rather, the Board weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Id.* The Board must consider all pertinent record evidence in making this determination, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Id.*

Regarding the first *Carr* factor, we find that the strength of the agency's evidence in support of its removal action is strong. For the reasons discussed above, the administrative judge correctly found that the agency proved all three specifications of its charge. Although we have sustained the agency's charge based on the preponderance of the evidence standard, we find that the agency's evidence is also sufficient to meet the higher clear and convincing evidence standard. Moreover, the record shows that the appellant continued to engage in the same type of misconduct despite the agency's use of progressive discipline to alert her that this type of misconduct would not be tolerated. IAF, Tab 8 at 111-14.

Regarding the second *Carr* factor, we find that the deciding official had a substantial motive to retaliate. Because the appellant's supervisor testified that she was not aware that the appellant had filed an OIG complaint until a week before the hearing in this appeal, we find that she did not have a motive to retaliate. HT at 26, 37, 47-48 (testimony of the supervisor). The deciding official testified that the appellant told him that she would be filing an OIG complaint, but that this information did not impact his decision to remove her. HT at 103-04 (testimony of the deciding official). Although the record does not

reveal exactly what the appellant disclosed to OIG, she testified that she filed an OIG complaint in August 2015, and she alleges that she reported wrongdoing to OIG in February 2016. IAF, Tab 1 at 5, Tab 14 at 3; HT at 167 (testimony of the appellant). Thus, we can assume that she raised the same or similar claims of harassment and a hostile work environment that she raised before the agency in her March 2015 request for an independent investigation and in her February 2016 oral reply to the proposed 14-day suspension. IAF, Tab 7 at 37, Tab 8 at 34-42; HT at 88-89, 110-13, 118-19 (testimony of the deciding official). We find that the deciding official had a motive to retaliate because the appellant's claims suggest that he was aware and tolerant of her supervisor's alleged harassment and creation of a hostile work environment. Thus, the appellant's OIG complaint reflected on the deciding official's capacity as a manager with supervisory authority over her and her supervisor, which is sufficient to establish a substantial retaliatory motive.[11] *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 33 (2013) (finding a retaliatory motive when the appellant's disclosures reflected on the agency officials' capacity as managers and employees).

Regarding the third *Carr* factor, our reviewing court has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1374 (2012). Here, the agency did not produce any evidence relevant to this factor. Thus, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Nevertheless, we find that the deciding official's substantial motive to retaliate and the absence of any evidence concerning *Carr* factor three are outweighed by the strength of the agency's evidence in support of its removal action, especially

---

[11] The deciding official testified that he was the appellant's third-level supervisor. HT at 88 (testimony of the deciding official).

the appellant's history of engaging in the same misconduct. We find that the deciding official's principal motivation for removing the appellant was her unwillingness to change her behavior despite receiving progressive discipline. In particular, the deciding official testified that he had hoped the use of progressive discipline would change the appellant's behavior and cause her to recognize that she needed to follow her supervisor's directions to attend meetings. HT at 96 (testimony of the deciding official). He further testified that he thought that the appellant's continued failure to follow her supervisor's instructions was flagrant and that he felt there was no other choice but to remove her. HT at 96-97 (testimony of the deciding official). Therefore, we find that the agency has proven by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *See Carr*, 185 F.3d at 1326 (noting that the whistleblower protection statutes are not meant to protect employees from their own misconduct).

<u>The appellant has failed to prove her affirmative defense of a violation of her due process rights.</u>

The appellant reasserts her affirmative defense of a violation of her due process rights. PFR File, Tab 1 at 7-9, 11-12. She claims that, when the agency decided and implemented her immediate removal, she did not receive prior notice of a final decision and she was not allowed to appeal the final decision (within the agency) or to have union representation. *Id.* at 8; IAF, Tab 14 at 7. The record shows that the agency provided the appellant with minimum due process consisting of notice of her proposed removal and an opportunity to respond in person and in writing to the proposed removal before the deciding official. IAF, Tab 7 at 49-54, Tab 8 at 111-12; *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Although the appellant claims that she did not receive the notice of the proposed removal because she immediately returned a sealed envelope containing the notice to her supervisor, we find that the agency's diligent and intelligent efforts of attempting to meet with her for the purpose of

providing notice and leaving a copy of the notice on her desk in a sealed envelope constitutes constitutionally sufficient notice.[12]  PFR File, Tab 1 at 6; IAF, Tab 7 at 76-77, Tab 8 at 19; HT at 158-62 (testimony of the appellant); *see Pangarova v. Department of the Army*, 42 M.S.P.R. 319, 324-26 (1989) (finding constructive delivery of the agency's notice proposing a security clearance revocation when the appellant refused to accept the proposal notice without a union representative present and she was told what was in the letter and the date of her deadline for responding); *see also Givens v. U.S. Postal Service*, 49 M.S.P.R. 374, 378 (1991) (finding that an agency must make diligent and intelligent efforts—such as might reasonably be adopted by one desirous of actually informing the employee—to provide such minimum due process prior to the effective date of its action). Further, the appellant testified and admits on review that she and her union representative met with the deciding official regarding the proposed removal and that she provided him with written documentation.  PFR File Tab 1 at 6; HT at 163-65 (testimony of the appellant).  Therefore, we discern no reason to disturb the administrative judge's finding that the appellant failed to prove her affirmative defense of a violation of her due process rights.  ID at 12.

Moreover, we are not persuaded by the appellant's argument that she did not receive due process because the agency did not produce an OIG report and because the agency minimized the importance of the OIG investigation.  PFR File, Tab 1 at 9.  As explained above, the appellant had the opportunity to conduct discovery below and she is precluded from raising a discovery issue for the first time on review.  *See Szejner*, 99 M.S.P.R. 275, ¶ 5.  Further, to the extent the appellant is disputing the deciding official's testimony that OIG did not issue a report and chose not to investigate her complaint, the administrative judge did

---

[12] The appellant challenges on review the administrative judge's finding that it is undisputed that the agency issued a notice of proposed removal to her.  PFR File, Tab 1 at 6; ID at 2.  Even assuming that the administrative judge mischaracterized that fact as undisputed, we find that the appellant's substantive rights have not been harmed because we find that the agency met its notice obligations.  *See Panter*, 22 M.S.P.R. at 282.

not abuse her discretion by sustaining an objection to such testimony because it was speculative.  PFR File, Tab 1 at 9; HT at 132 (testimony of the deciding official).

The agency proved nexus and the reasonableness of the penalty.

The appellant does not dispute, and we find no reason to disturb, the administrative judge's finding that the agency established the requisite nexus.  ID at 13; *see Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 24 (2014) (finding that the agency proved nexus because the charge of failure to follow instructions directly related to the efficiency of the appellant's service).

When, as in the instant appeal, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all the relevant *Douglas* factors[13] and exercised management discretion within the tolerable limits of reasonableness.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010).  The Board will modify or mitigate an agency-imposed penalty only if it finds that the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness.  *Id.*  The appellant does not dispute, and we discern no basis to disturb, the administrative judge's findings that the agency properly considered the relevant factors and that the penalty of removal is within the agency's discretion.  ID at 13-15; HT at 96-102 (testimony of the deciding official); IAF, Tab 8 at 113-16.

The appellant argues on review that the agency improperly "stacked" disciplinary actions against her while the OIG investigation was ongoing.  PFR File, Tab 1 at 7.  It is unclear what the appellant is arguing.  To the extent she is arguing that the agency improperly considered her prior disciplinary actions in deciding to impose her removal, we find that the agency properly relied on such

---

[13] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of 12 factors that are relevant in assessing the appropriateness of an agency-imposed penalty for an employee's misconduct.

actions in effecting her removal. *See Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981) (establishing the criteria for the Board's review of an appellant's past discipline on which an agency has relied in determining a penalty). We note that the Board held in *Ibarra v. Department of the Air Force*, 11 M.S.P.R. 110, 113 (1982), that an agency, by continuing to issue the same order at various intervals, cannot thereby increase the severity of the penalty in a case when the agency may reasonably anticipate that the order will not be obeyed. However, we find that the instant appeal is distinguishable from *Ibarra* because the agency here imposed progressive discipline for the appellant's continued failure to follow her supervisor's instructions. *Id.* (agreeing with the appellant's contention that the agency failed to impose progressive discipline).

The appellant's additional argument of adjudicatory bias does not provide a basis for review.

Finally, the appellant asserts that the administrative judge's judgment was biased because it was based on the testimony of her supervisor and the deciding official. PFR File, Tab 1 at 11. The Board will not infer bias based on an administrative judge's case-related rulings. *Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 18 (2013). We find that the appellant's broad allegation of bias is insufficient to rebut the presumption of the administrative judge's honesty and integrity. *See Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980) (observing that, in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators).

Accordingly, we affirm the agency's removal action.

## NOTICE OF APPEAL RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:        _____
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.